**Jon Alan ASHCRAFT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–92–264–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 22, 1996.

Rehearing Overruled Dec. 5, 1996.

See also, 900 S.W.2d 817.

Glen A. Barnard, Harlingen, Alfredo Padilla, Brownsville, for Appellant.

Luis V. Saenz, District & County Attorney, John A. Olson, Asst. County & District Attorney, Robert H. Moore, Jr., Assistant County (Criminal Dist.) Attorney, Brownsville, Robert Huttash, State Prosecuting Attorney, Matthew W. Paul, Assistant State Attorney, Austin, for Appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

Appellant, Jon Alan Ashcraft, was convicted of burglary of a habitation and assessed punishment at seventy-five years in prison and a $5,000 fine. On original submission, the majority of this Court held that the search warrant failed to show probable cause for the search and seizure of stolen property from appellant's home, and we reversed the

trial court's judgment and remanded the cause for a new trial. *Ashcraft v. State,* No. 13–92–264–CR (Tex.App.—Corpus Christi, August 31, 1996) (not designated for publication). The State challenged our holding and sought discretionary review from the Court of Criminal Appeals. That Court summarily granted review of ground two of the State's petition and remanded the case to us to consider 1) whether the State sufficiently established probable cause as to the heroin portion of the search warrant and 2) whether the invalid portion of the search warrant could be severed from the valid portion.[1] *Ashcraft v. State,* No. 1182–94 (Tex.Crim. App. December 21, 1994) (per curiam) (not designated for publication). We affirm the trial court's judgment.

Appellant was arrested after police executed a search warrant purporting to authorize a search for both heroin and stolen property. We held that the search warrant was invalid because the affidavit supporting the warrant failed to allege sufficient facts to establish probable cause that appellant was in possession of stolen property located at his residence. In its petition for discretionary review, the State did not dispute that the warrant was defective as to the search for stolen property. However, the State contends that the warrant affidavit alleged sufficient facts to establish probable cause that appellant sold heroin from his residence. Therefore, the State argues that the valid portion of the warrant authorized the police officers' search of the premises and the seizure of stolen property found on the premises pursuant to the plain view doctrine.

■ On remand, appellant asserts, in point one, that the search warrant was not based on probable cause, that the evidence seized was the result of an illegal search, and that the trial court erred in admitting that evidence. Appellant contends that probable cause is lacking because the warrant's supporting affidavit, based upon information gained by informant hearsay and by police observation, fails to establish the informants' credibility, reliability, and basis of knowledge.

■ A warrant may issue for the police to search a certain place and seize certain items only if supported by an affidavit showing facts and circumstances within the affiant's knowledge that would warrant a person of reasonable caution to believe that a specific offense has been committed and that property resulting from or evidencing the offense is located at the particular place to be searched. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. arts. 18.01(b), (c) and 18.02(1), (7) (Vernon 1977 & Supp.1995); *see also Berger v. New York,* 388 U.S. 41, 55–56, 87 S.Ct. 1873, 1881–82, 18 L.Ed.2d 1040 (1967). The existence of probable cause is determined upon "sufficient and substantial facts," based upon a practical common sense consideration of the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 238–39, 103 S.Ct. 2317, 2328, 2332–33, 76 L.Ed.2d 527 (1983); *Johnson v. State,* 803 S.W.2d 272, 289 (Tex. Crim.App.1990); *Mason v. State,* 838 S.W.2d 657, 659–60 (Tex.App.—Corpus Christi 1992, pet. ref'd). Credibility, reliability, and basis of knowledge no longer need to be established by separate and independent facts. However, they remain highly relevant factors in determining, by the totality of the circumstances, whether probable cause exists. *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex. Crim.App.), *cert. denied,* 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *Morin v. State,* 800 S.W.2d 328, 329 (Tex.App.—Corpus Christi 1990, no pet.); *Dees v. State,* 722 S.W.2d 209, 215 (Tex.App.—Corpus Christi 1986, pet. ref'd). We do not engage in a *de novo* review of the affidavit's sufficiency. We give the magistrate's determination great deference. *Johnson,* 803 S.W.2d at 289. The adequacy of the affidavit is determined by the information contained within its four corners. *Cerda v. State,* 846 S.W.2d 533, 535 (Tex.App.—Corpus Christi 1993, no pet.).

---

**1.** We addressed these very issues in another burglary case involving appellant. *See Ashcraft v. State,* 900 S.W.2d 817, 826–29 (Tex.App.—Corpus Christi 1995, one pet. ref'd & one pet. dism'd). The two cases involved the same search warrant, affidavit, and facts relating to the execution of the warrant; therefore, our analysis in that case is applicable to the present case, and we draw extensively from it.

Here, the officers secured their search warrant on the strength of the following affidavit:

On June 23, 1991 about 3:30 p.m. Detective John Byrum and Detective Nicholas Araiza were on surveillance of a suspected drug dealer residing at 1710 South Parkwood Harlingen, Texas. Affiant has received reliable information from several informants[,] and the information obtained appeared to be in accordance with what information affiant was already aware of. The information received was that the suspect, Jon Ashcraft[,] was selling heroin to heroin addicts at the residence located at 1710 South Parkwood[,] Harlingen, Texas. The suspect was also known to be involved in burglaries of residences in the area known as the Parkwood Subdivision in Harlingen, Texas. On this particular day affiant and Detective John Byrum set up surveillance of the residence at 1710 South Parkwood[,] Harlingen, Texas. Affiant and Detective Byrum observed a yellow Nissan truck with two passengers arrive at the residence at 1710 South Parkwood. The male and female passengers were waiting around a carport for about 15 minutes until the suspect John Ashcraft came out of the house. The three appeared to be in the process of making a drug deal as is common practice with drug dealers and users. The couple left right after an apparent exchange and were later stopped by a Harlingen police unit away from the suspect's residence. The couple was identified as Augustin Pena and Juanita Torres of San Benito. The couple gave voluntary statements after being warned of their constitutional rights. Information obtained from the couple verified that heroin was being sold by John Ashcraft at his residence at 1710 South Parkwood[,] Harlingen, Texas.

When information is supplied by informants, the totality of circumstances outlined in the affidavit must establish probable cause. *Gates,* 462 U.S. at 232–38, 103 S.Ct. at 2329–32; *Cassias v. State,* 719 S.W.2d 585, 588 (Tex.Crim.App.1986); *Dees,* 722 S.W.2d at 215. While probable cause may be based upon hearsay, the hearsay must be credited at each level in order to meet constitutional requirements. *Hennessy v. State,* 660 S.W.2d 87, 91 (Tex.Crim.App.1983). Informant hearsay may be credited by showing that the informant has given reliable, credible information in the past, or by police corroboration. *Cerda,* 846 S.W.2d at 535; *see also Polanco v. State,* 475 S.W.2d 763, 766 (Tex.Crim.App.1971). Here, the affiant officer made no attempt to identify the informant or to demonstrate the reliability, credibility, or basis of the informant's knowledge. However, the police may corroborate informant hearsay by their own surveillance. *Polanco,* 475 S.W.2d at 766.

Based upon the hearsay information, Officers Araiza and Byrum became suspicious of appellant for heroin dealing. They began watching appellant's house for more indicia of such criminal involvement. The magistrate is entitled to rely upon information supplied by the police officers' own observations and upon information supplied by fellow officers engaged in a common investigation. *Johnson,* 803 S.W.2d at 289. In Texas, the affidavit must be more than a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Id.* at 288. The magistrate must not be asked merely to ratify the bare conclusions of others. *Id.*

Here, affiant's statements that "the three appeared to be in the process of making a drug deal as is common practice with drug dealers and users" and that "the couple left after an apparent exchange," are too conclusory by themselves to establish probable cause. However, at least one Texas case has held that a similar statement—"[the officer] observed the appellee engaged in a narcotics transaction"—was sufficient when accompanied by other credible, reliable information. *See State v. Cantu,* 785 S.W.2d 181, 184–85 (Tex.App.—Houston [14th Dist.] 1990, no pet.). We therefore examine the adequacy of other information in this affidavit for corroboration of the officers' observations.

An informant's declarations against the informant's own penal interest

may be used to corroborate the reliability of information in an affidavit. *See Abercrombie v. State*, 528 S.W.2d 578, 583–85 (Tex.Crim. App.1974) (opinion on reh'g) (where search warrant affidavit revealed that unnamed informer made a declaration against penal interest, the affidavit sufficiently established the reliability and credibility of the informer). Araiza's affidavit says that the couple in the truck was stopped, given constitutional warnings, and gave statements confirming police suspicions that a drug transaction had occurred. The magistrate is authorized to make reasonable inferences from the facts stated in the affidavit. *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992); *Hennessy*, 660 S.W.2d at 90. We hold that the magistrate could reasonably have concluded that the couple admitted to purchasing heroin from appellant. Such admissions by the couple were declarations against their own penal interests which may be used to corroborate the reliability of information in the search warrant affidavit. Accordingly, we conclude that, based upon the totality of circumstances outlined within the four corners of the affidavit, the magistrate had a substantial basis to believe that appellant sold the couple heroin and that more of the drug could be found at his house. Probable cause existed with regard to heroin dealing because the police observations were corroborated by the couple's declarations against penal interest. Therefore, although no valid search warrant existed with respect to the stolen property, the warrant was valid as to heroin. *Cf. Oubre v. State*, 542 S.W.2d 875, 877 (Tex.Crim.App.1976).

■ However, a defect in the warrant does not render the warrant invalid as a whole. *Walthall v. State*, 594 S.W.2d 74, 79 (Tex.Crim.App.1980); *Dowler v. State*, 777 S.W.2d 444, 449 (Tex.App.—El Paso 1989, pet. ref'd). The invalid portion of the warrant can be severed from the valid portion. *Walthall*, 594 S.W.2d at 79. A warrant that is valid in part is sufficient in allowing the lawful entry of the police to execute the warrant. *Id.*

■ The search warrant for drugs permitted the officers to lawfully enter appellant's home that he shared with his mother. The police testified that when they arrived at appellant's house, they immediately placed him under arrest, informed him they had a warrant to search the premises, and gave him *Miranda*[2] warnings. Araiza testified that appellant acknowledged that he understood his rights. Araiza then asked appellant where he kept the heroin and "stolen property that he might have." Appellant cooperated and showed the officers where he kept the heroin and stolen property. Following appellant's directions, the officers found the heroin in a film canister, a computer under the bed, a shotgun in the closet, and a television set in a storage shed behind the house. Additionally, Araiza testified that many of the stolen items were "out in the open."

Therefore, the facts show that the police were legally on the premises pursuant to the valid portion of the warrant relating to heroin, appellant received *Miranda* warnings, and appellant cooperated and directed the police to the locations of the heroin and stolen property. Accordingly, we hold that the evidence procured as a result of this particular search was admissible. Our holding is limited to the facts of this case where the warrant for drugs is the type of search that is broad in scope and allows the police to search in every nook and cranny of the house. In their search for drugs, the police would have discovered the items, including the computer under the bed, the shotgun in the closet, and the television in the storage shed. These latter items matched the description of stolen property that the officers had from an offense report of the burglary of 802 Ebony, the residence for which appellant was indicted in this case. Moreover, the police's discovery, in appellant's house, of fifty-seven items of electronic equipment, including televisions, VCRs, stereos, and video games, gives credence to the officers' reasonable suspicion that these items were stolen. Therefore, while a valid portion of a search warrant does not automatically validate the seizure of items under an invalid part of the

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

warrant, we conclude that under the facts of this case, seizure of the heroin and stolen property was proper. We overrule appellant's point one.

By point two, appellant contends that the search warrant violated the federal and state constitutions because it is a general search warrant which, on its face, failed to describe either the place to be searched or the persons or things to be seized. Appellant further alleges that a copy of the supporting affidavit was neither attached to the warrant nor left with him or his mother.

When a defendant seeks to suppress evidence, the burden of proof is initially on the defendant. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986). "As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State." *Id.*

A valid search warrant must sufficiently identify "as near as may be" the person, place or thing to be searched. TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. arts. 1.06, 18.04 (Vernon 1977). A warrant that does not contain the place to be searched, the items to be seized, or the person alleged to be in charge of the premises is not invalid provided that the warrant incorporates by reference a sufficiently specific affidavit to support it. *See Turner v. State,* 886 S.W.2d 859, 864 (Tex.App.—Beaumont 1994, pet. ref'd); *Gonzales v. State,* 743 S.W.2d 718, 719 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). It is well-settled law in Texas that a description contained in an affidavit limits and controls the description contained in the warrant. *Rios v. State,* 901 S.W.2d 704, 706 (Tex.App.—San Antonio

1995, no pet.); *see also Faulkner v. State,* 537 S.W.2d 742 (Tex.Crim.App.1976) (holding that affidavit incorporated by reference and stapled to warrant could be used to aid description found in warrant). The failure to physically attach the affidavit to the warrant is not a violation of the search warrant statutes because article 18.06(b) of the Code of Criminal Procedure only requires that the warrant and a written inventory be served upon the owner of the premises to be searched. TEX.CODE CRIM. PROC. ANN. art. 18.06(b) (Vernon Supp.1996); *Turner,* 886 S.W.2d at 864; *Gonzales,* 743 S.W.2d at 720 (article 18.06(b) does not require a copy of the affidavit for the warrant to be provided). Absent some showing of prejudice or harm, the failure to provide a copy of the affidavit does not render the search invalid. *Gonzales,* 743 S.W.2d at 720; *see also Robles v. State,* 711 S.W.2d 752, 753 (Tex.App.—San Antonio 1986, pet. ref'd) (holding that failure to deliver a copy of search warrant and itemized copy of the warrant return to defendant, in absence of showing of injury, reveals no error).

Appellant is correct that the search warrant failed to name the persons to be arrested, the place to be searched, or the items to be seized. However, the warrant incorporates the affidavit by reference, and the affidavit specifically identifies the place to be searched, the property to be seized, and the person in charge of the premises.[3] Although the warrant was presented to appellant when it was executed, the affidavit was not. However, the record shows that the affidavit was physically present at the search site. In fact, Officer Araiza testified that he had the affidavit in his car. The record also reflects that appellant's mother was given a copy of the return. We hold

---

3. The affidavit states in relevant parts as follows:
   1. There is in Cameron County, Texas a suspected place described and located as follows: A brick structure residence light brown in color bearing an address of 1710 South Parkwood Harlingen, Texas and to include any and all buildings having the same physical address as 1710 South Parkwood Harlingen, Texas. Included in this property will be any and all vehicles at this address.
   2. Said suspected place is in charge of and controlled by each of the following named par-

ties (hereafter call "suspected party" whether one or more) to wit:
   John Ashcraft D.O.B. 8/3/55 and other persons known to affiant.
   3. It is the belief of affiant, and affiant hereby charges and accuses that said suspected party has possession of and is concealing at said suspected place in violation of the laws of Texas the following described personal property, to wit:
   Heroin, cocaine and stolen property.

that the "general search warrant" is not invalid because the affidavit was referenced in the warrant and that the failure to provide appellant with a copy of the affidavit did not render the search invalid. We overrule point two.

By point three, appellant asserts that the admission of his confession into evidence violated his right under the Fourth Amendment of the United States Constitution and Article 1, § 9 of the Texas Constitution. Appellant argues that his two confessions were involuntary because: 1) he did not waive his right to an attorney since he did not initial that part of the waiver; 2) his confessions were made on the basis of threats and promises made by the police; and 3) he was medicated at the time the statements were made.

Detective Araiza testified that upon arriving at appellant's house, he showed appellant the search warrant, arrested him, and informed him of his *Miranda* rights. The detective then asked appellant where he kept the heroin and stolen property. Araiza stated that he neither threatened appellant nor did he threaten to jail appellant's mother. Araiza did tell appellant that his mother could be held accountable for any stolen property found at the house. By this statement, Araiza testified that he was suggesting that if the officers were to find the stolen property without appellant's cooperation, then appellant's mother could be held accountable for the stolen property. According to Araiza, it is normal police procedure to inform the occupants of the house that anyone in the house can be held responsible for drugs or stolen property found. Appellant then showed the officers where the drugs and stolen items were.

At the police station, the officers again read appellant his rights, and he stated that he understood his rights. Thereupon, he initialed and signed the statement waiving his rights and confessed to the burglaries in the Parkwood neighborhood. However, no initials appear beside that portion of the statement waiving his right to have a lawyer present during questioning. Nevertheless, appellant did not ask for an attorney to be present while he was interviewed. Araiza testified that he made no promise to appellant nor did he use force or coercion to obtain the confession.

Before appellant gave his statement, he told Araiza that he was a heroin addict and that he had used some earlier in the morning. During the interview, appellant told the officers that he anticipated experiencing withdrawal symptoms; however, the officers observed no signs of withdrawal. Appellant also complained of back pain and, towards the end of his statement, requested Tylenol 3 with codeine. Officer Byrum stated that appellant asked for the medication, and Byrum said he would get it. He did not promise to get the medication for appellant only if appellant finished making the statement. Appellant received no medication until after he gave his statement. Byrum retrieved appellant's prescribed medicine from his home and gave appellant the pills as prescribed. According to the policy of the Harlingen Police Department, inmates may be given prescribed medication while they are in jail.

The next day, appellant was given the medication at 9:00 a.m., 12:00 p.m., and 4:00 p.m. Appellant was arraigned on this day. At his arraignment, Andres Hernandez, another person being arraigned that day, testified that appellant "looked all strung out" and that he looked drunk or on downers or pills. After the arraignment, appellant volunteered to be taken to the Parkwood neighborhood where he would point out the houses he had burglarized. During the ride, appellant said that he was sick and experiencing withdrawal symptoms, but Byrum testified that appellant did not exhibit any symptoms. Araiza stated that Byrum gave appellant some of the said medication during the ride.

Upon their return to the station after the ride, appellant gave a second statement. Again, the officers read appellant his *Miranda* rights, and appellant initialed and signed the document waiving his rights. The time given in the second statement reflects that it was made at 12:00 p.m., which is the time that appellant received his medication. Araiza stated that appellant received no medication during the making of the statement and that he observed no signs of withdrawal prior to or during the statement. The contents of the second statement consisted of a

list of addresses of houses that appellant had identified as houses he had burglarized.

Araiza testified that throughout the interviews, appellant appeared normal and coherent and spoke in a clear voice. Araiza further stated that appellant was in a good mood and joked with the officers. Appellant wanted to talk about the burglaries and said he was glad it was all over. Araiza believed that appellant understood what his rights were and that he voluntarily relinquished those rights.

■■■■ To meet constitutional standards, a confession must be both voluntary and taken in compliance with *Miranda.* *Martinez v. State,* 645 S.W.2d 322, 324 (Tex. App.—Corpus Christi 1982, no pet.). The determination of whether a confession is voluntary must be based on the totality of circumstances surrounding its acquisition. *McCoy v. State,* 713 S.W.2d 940, 955 (Tex. Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). When a question is raised as to the voluntariness of a statement of an accused, the trial court must hold a hearing outside the presence of the jury to determine if the accused made the statement freely and voluntarily. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979).

■■■■ The State bears the burden of proof to show that the statement was voluntary. *Gentry v. State,* 770 S.W.2d 780, 789 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). The State must satisfactorily explain the accused's allegations of coercion in order to satisfy its burden of proof. *Farr v. State,* 519 S.W.2d 876, 880 (Tex.Crim.App.1975). The State need not rebut appellant's assertions; it only needs to controvert them. *Muniz v. State,* 851 S.W.2d 238, 252 (Tex. Crim.App.1993). With controverted evidence, the trial court is the sole trier of facts and the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Id.; Jacobs v. State,* 787 S.W.2d 397, 400 (Tex.Crim.App.1990); *McCoy,* 713 S.W.2d at 955. The trial court can reject or accept the witnesses' testimony. *Kelly v. State,* 621 S.W.2d 176, 179 (Tex. Crim.App.1981). This Court's review of the trial court's findings is limited to a determination of whether the trial court abused its discretion. *Id.; Garcia v. State,* 829 S.W.2d 830, 833 (Tex.App.—Dallas 1992, pet. ref'd). If the trial court's resolution on the controverted issue of the voluntariness of a confession is supported by the evidence, we will not disturb the trial court's decision. *Muniz,* 851 S.W.2d at 252.

## A. Right to Counsel

■■■■ Appellant contends that his confession should have been suppressed because of an invalid waiver of his right to counsel. A defendant may waive his *Miranda* rights provided the waiver is made voluntarily, knowingly, and intelligently. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Only if the totality of circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Moran,* 475 U.S. at 421, 106 S.Ct. at 1141.

■■■■ While defendant's signing of a prepared statement which included. pre-printed averments indicating that the signer understood his rights and freely waived them is not determinative of the question of affirmative waiver, it is significant evidence. *Martinez,* 645 S.W.2d at 323. Appellant's argument that his failure to initial the portion of the waiver relating to right to counsel is analogous to the argument rejected by the court in *Jacobs v. State,* 787 S.W.2d 397 (Tex.Crim.App.1990).

In *Jacobs,* appellant contended that his refusal to sign the bottom of the magistrate warning form creates a reasonable presumption that appellant did not intend to waive his right to counsel or talk to officers without counsel being present. In dismissing Jacobs' argument, the court merely stated that appellant presented no case law to support the theory that such a refusal invoked his Fifth Amendment right to counsel. *Jacobs,* 787 S.W.2d at 401.

■ Ashcraft made two different statements. In his first statement, he did not initial the right to counsel portion of the statement. In his second statement, he initialed all of the subparts. In *Jacobs*, the court dismissed the argument that a failure to sign a waiver of a right is equivalent to invoking that right without expressly ruling on the issue. We find that appellant's failure to initial that part of the statement waiving his right to counsel creates a presumption that he did not waive his right and that he thereby invoked that right. A defendant's signing of the waiver and statement benefits the State and signifies that the defendant did indeed waive his rights. However, a review of the totality of the circumstances surrounding the interrogation reveals that the statement was uncoerced and that appellant had the requisite level of comprehension to enable the trial court to properly conclude that appellant had waived his *Miranda* rights. *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141.

Although appellant may have failed to initial the portion at issue, he did in fact initial the portion that averred that he understood "*all* of my rights as stated above," which included the right to counsel, and that he voluntarily waived them. (emphasis added). The State presented witnesses who testified that police officers, on numerous occasions, warned appellant of his right to counsel and right to remain silent. Other than the absence of appellant's initials, there is no evidence in the record showing that appellant ever invoked his right to counsel. The testimony demonstrated that appellant was not confused or under duress when the warnings were given. Contrarily, appellant joked with the officers, stated that he understood his rights, and was eager to talk about the burglaries. Thus, the trial court did not abuse its discretion in finding that the confession was taken in compliance with *Miranda*.

### B. Inducement, Force, or Coercion

■ Appellant next asserts that the trial court should have suppressed the confessions because the police threatened and coerced him into confessing by threatening to jail his mother and withholding medication until appellant confessed. Appellant also suggests that he could not have knowingly, intelligently, and voluntarily confessed since he was under the influence of a narcotic and/or the medication.

■ In determining whether a confession was improperly obtained based on the ground that it was induced by the promise of some benefit to defendant, such promise must be 1) positive, 2) made or sanctioned by a person in authority, and 3) of such character as would be likely to influence the defendant to speak untruthfully. *Jacobs*, 787 S.W.2d at 399; *Fisher v. State*, 379 S.W.2d 900, 902 (Tex.Crim.App.1964). Ashcraft claimed that Detective Araiza threatened to arrest his mother and promised not to arrest her if he cooperated. The testimony of appellant's mother reflected his claim. The State presented Araiza's testimony in which he stated that he made no threats or promises and that no force or coercion was used. Araiza did tell appellant that his mother could be held accountable for any stolen property found on the premises. Araiza further testified that it was normal police procedure to tell the occupants of the house that they can be held responsible. Araiza also told appellant that "it would be easier if he cooperated and let us know where he had the drugs in the house." Appellant cooperated and led the police to the drugs and stolen property because he did not want his mother involved. Prior to appellant's first confession, Araiza asked him if he understood that his mother might be held accountable, and appellant said he understood. In ruling on a motion to suppress the evidence, it is within the trial court's province to determine whether appellant received a positive and unequivocal promise from a party in authority. By denying the motion to suppress the confession, the trial court answered the question in the negative. The trial court did not abuse its discretion in doing so.

■ Appellant's inducement argument is also based on his claim that an officer promised to get him medication as soon as he finished the confession. Appellant complained of back pain during his first confession and requested his medication which was Tylenol 3 with codeine. Officer Byrum said that he would get the medicine for him.

Byrum averred that he did not promise to procure the medication provided appellant finished the confession. Appellant received the medication later that evening after Byrum retrieved it from appellant's house. Appellant failed to show that the police positively and unequivocally promised medication in return for a confession.

■ We now address appellant's assertion that his confessions were involuntary since he was under the influence of heroin and/or the codeine medication. Appellant had taken heroin the morning of his arrest. Later that evening, during his first confession, appellant said he anticipated experiencing withdrawal symptoms but the officers observed none. The next day, June 24, appellant received his medicine per prescription at 12:00 a.m., 4:50 a.m., 9:00 a.m., 12:00 p.m., and 4:00 p.m. Appellant was arraigned the morning of June 24. Hernandez, also being arraigned, testified that Ashcraft looked high and strung out. During his ride through the neighborhood later that morning, appellant said he was experiencing withdrawal symptoms but, again, the officers observed none. Araiza mentioned that he believed Byrum gave appellant some medication during the ride. Upon returning to the station, appellant made his second confession at 12:00 p.m., the same time he had received his medication.

Araiza testified that appellant received no medication during the making of the second confession. Araiza did not observe appellant exhibiting any withdrawal symptoms prior to or during the second statement. Byrum stated that he was familiar with some symptoms that heroin addicts experience during withdrawal such as shakiness and getting horribly sick. According to Byrum, appellant did not show these signs; rather, he appeared normal and coherent. The officers consistently testified that appellant seemed normal and coherent and understood the proceedings. Appellant wanted to talk about the burglaries and volunteered to show them the houses he had burglarized.

The State's evidence contradicted appellant's assertions. The trial judge was the sole judge of the credibility of the witnesses at the hearing on the voluntariness of the confession. Because there is evidence in the record to support the trial court's finding that the confession was freely and voluntarily given, we cannot rule that the trial court abused its discretion. We hold that the trial court did not err in denying appellant's motion to suppress the confessions and overrule appellant's point three.

■ In his brief on original submission, appellant alleges in his second point of error that the trial court erroneously admitted evidence of extraneous, unadjudicated offenses in the punishment phase of the trial. Appellant objects to the testimony of three State witnesses who related details of other burglaries that occurred prior to the date of the present offense. The witnesses' testimony implicated appellant although they testified that they did not know who committed the burglaries, no one was arrested for the burglaries, and they did not know appellant.

The first witness, Deanna Bourgeois, testified that her house door had been kicked in and her home burglarized. When the prosecutor asked Bourgeois if she knew what items were taken and to describe her feelings as a burglary victim, appellant objected that the questions were immaterial and irrelevant. The trial court overruled the objection as too general. Appellant's point on appeal does not comport with the objection made at trial; therefore, appellant has not preserved this complaint for review. TEX.R.APP. P. 52(a); *Martinez v. State,* 867 S.W.2d 30, 40 (Tex. Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

Dennis Narup, the second witness, testified that his father's house on 802 East Parkwood was burglarized in July 1990. Narup stated that the burglar pried open the patio doors and ransacked the house. Appellant's only objection to this witness was that he had violated the Rule by being present during the first witness' testimony. This objection does not comport with the argument raised on appeal and, therefore, is not before us for review. TEX.R.APP. P. 52(a).

■ Appellant objected to the third witness on grounds that his testimony pertained to an extraneous offense. The third witness, Ted Narup, testified that he lived at 802 East Parkwood and that his home had been burglarized. The State argued for admission of this evidence claiming that this was the same

home that appellant admitted to burglarizing twice in his second confession. Appellant's extraneous offense objection was sufficient to preserve this error.

The Court of Criminal Appeals construed article 37.07, § 3(a) of the Code of Criminal Procedure to provide that even if deemed relevant to sentencing by the trial court, evidence is not admissible at punishment unless 1) it is permitted by the Rules of Evidence, and 2) if the evidence sought to be admitted is evidence of an extraneous offense, it satisfies article 37.07, § 3(a)'s definition of prior criminal record. *Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App. 1992). Prior criminal record means a final conviction in a court of record, a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. Act of June 15, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (amended 1993) (current version at TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1996)). Thus, it is error for a trial court to admit evidence of unadjudicated, extraneous offenses during the punishment phase in the trial of a non-capital offense. *Grunsfeld,* 843 S.W.2d at 526.[4] No distinction is made between uncharged bad acts committed prior to or after the offense for which the defendant is being prosecuted. *McMillian v. State,* 865 S.W.2d 459, 460 (Tex.Crim.App.1993). Accordingly, we hold that the trial court erred in admitting Ted Narup's testimony relating to the unadjudicated, extraneous offense of burglary.

■ Having found error in the punishment phase, we must now determine whether this error was harmless beyond a reasonable doubt in the jury's assessment of punish-

ment. TEX.R.APP. P. 81(b)(2); *Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim.App. 1989); *Morin v. State,* 800 S.W.2d 328, 330 (Tex.App.—Corpus Christi 1990, no pet.). Evidence relating to the burglary of Ted Narup's residence was already admitted during the guilt/innocence phase of the trial when appellant's second confession, which listed the residence as one he had burglarized, was admitted. At the punishment phase, the jury is allowed to consider all the evidence introduced at the guilt/innocence phase. Additionally, evidence of this offense was admitted through Dennis Narup's testimony without objection from appellant. Therefore, any error in admitting Ted Narup's testimony was harmless. We overrule point two from appellant's original brief.

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.

---

4. After the *Grunsfeld* decision, the legislature amended article 37.07, § 3(a), effective September 1, 1993, to allow for the admission of evidence of unadjudicated, extraneous offenses by providing that permissible evidence at the sentencing phase includes the following:

the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence

to have been committed by the defendant or for which he could be held criminally responsible, *regardless of whether he has previously been charged with or finally convicted of the crime or act.* (Emphasis added).

Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3589, 3762. The amended statute is inapplicable here because it was amended subsequent to appellant's commission of the offense and trial. The 1993 amendment is reflected in the current version of the article. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1996).