NUMBER 13-00-303-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


CODY DEWAYNE MITTEN, Appellant,


v.



THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 377th District Court


of Victoria County, Texas.


__________________________________________________________________


O P I N I O N



Before the Court En Banc (1)



 A jury found appellant, Cody Dewayne Mitten, guilty of capital murder, thereby
implicitly rejecting his affirmative defense of insanity. The State did not elect to seek
the death penalty, and the trial court assessed punishment at life imprisonment in the
Texas Department of Criminal Justice, Institutional Division. By four issues, Mitten
complains of (1) the jury's implicit finding that he was not insane at the time of the
offense; (2) the trial court's refusal to suppress his written statement; (3) the
admission of an incriminating oral statement made during a competency examination;
and (4) the court reporter's failure to transcribe and transmit a complete record of the
proceedings. By two additional issues, Mitten complains of ineffective assistance of
counsel. We affirm.

 On the evening of August 2, 1997, Mitten, accompanied by his mother,
Candelaria Mitten (Candy) and a man believed to be Larry Sifford, went to the
emergency room of Citizens Medical Center in Victoria, Texas, for treatment. Dr.
David Blanchard, the emergency room doctor, examined Mitten whose chief complaint
was he was tired and weak; he had a general feeling of malaise. Mitten also reported
"not eating or drinking right." While Dr. Blanchard did not remember talking with the
woman regarding Mitten's health, the man did voice the same concerns Mitten
expressed. Dr. Blanchard testified Mitten maintained direct eye contact with him
during their discussion. Mitten was discharged and instructed to follow up with a
physician if the feelings continued.

 Later that evening, Mitten was watching television and eating ice cream with
his mother and Sifford. (2) He went into the kitchen, picked up a knife, walked back into
the living room and stabbed Sifford and his mother. Mitten pulled the telephone from
the wall. He put his mother's body in the back seat of Sifford's vehicle and drove
around the Victoria area for several hours. Mitten eventually drove to the emergency
room of Brooke Army Medical Center in San Antonio, and asked for help. Mitten
carried his mother's body inside where she was pronounced dead.

 Several San Antonio police officers were called to the hospital. While at the
hospital, Mitten made an exculpatory oral statement to Detective Edward Giddings and
Sergeant Larry DeHaven of the San Antonio Police Department. Mitten stated he was
visiting his mother and Sifford at his mother's home in Victoria. They were watching
television when Mitten heard his mother gasping for air. Turning around, he saw that
Sifford had stabbed his mother in the chest. Mitten said he took the knife out of his
mother and stabbed Sifford. When the Victoria County Sheriff's Office was notified
regarding the existence of a dead body at Candy's home, a deputy responded and
found the body that was later identified as Sifford. Mitten was taken to the police
station where he gave a written statement which conflicted with his earlier oral
statement.

 On August 4, 1997, Dr. Blanchard again saw Mitten in the emergency room at
the Citizens Medical Center. Mitten complained of a seizure he had at the Victoria
County Jail. Dr. Blanchard observed Mitten was much the same as he had been when
he was seen on August 2, 1997, with the aspect that Mitten had a "flat affect." 
Mitten told Dr. Blanchard he deliberately caused the seizure by holding his breath. Dr.
Blanchard did not notice any confusional state or anything inappropriate for someone
just having had a seizure.

 At trial, both the defense and the State called expert witnesses to testify
regarding Mitten's legal sanity at the time of the murders. Although the doctors did
not agree on a specific diagnosis, they agreed Mitten had some form of psychosis. (3)

 The defense presented Dr. Gary Aitcheson, a psychiatrist who conducted an
interview with Mitten on January 21, 2000, and reviewed medical records from
Vernon State Hospital dated March 1998 to June 1998. Psychiatrist, Dr. Robert
Lyman, also testified for the defense. Dr. Lyman examined, evaluated and treated
Mitten beginning a few days after Mitten was arrested. Drs. Aitcheson and Lyman
concluded Mitten was legally insane at the time of the offense.

 Dr. Richard Coons, a psychiatrist, and Dr. John Quinn, a forensic psychologist
at Vernon State Hospital, were called as expert witnesses for the State. Dr. Coons
evaluated Mitten on September 22, 1998, and while he did not offer an opinion on
Mitten's sanity, stated there was information suggesting Mitten knew his conduct was
wrong. This information included (1) typical family behavior just before the stabbings,
(2) an inference that Mitten was attempting to hide something when he pulled the
phone line from the wall, and (3) Mitten's exculpatory statement claiming Sifford
stabbed his mother. Dr. Quinn saw Mitten as a patient at Vernon State Hospital for
approximately two and a half months, from March 3, 1998, to May 22, 1998. He
also conducted an evaluation of Mitten to determine his competency to stand trial. Dr.
Quinn did not offer an opinion on the issue of insanity.

I. Insanity Defense

 By his first issue, Mitten presents a factual sufficiency challenge. He complains
that the jury's implicit rejection of his insanity defense was so against the great weight
and preponderance of the evidence that its guilty verdict was manifestly unjust.

A. Standard of Review

 In examining the factual sufficiency of the evidence supporting the affirmative
defense of insanity, we consider all the evidence relevant to the issue to determine
whether the judgment is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Bigby v. State, 892 S.W.2d 864, 975 (Tex.
Crim. App. 1994); Meraz v. State, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990);
Torres v. State, 976 S.W.2d 345, 347 (Tex. App.-Corpus Christi 1998, no pet.); see
Johnson v. State, 23 S.W.3d 1, 7 (2000) (great weight and preponderance of
evidence standard is standard properly utilized when appellant has burden of proving
affirmative defense by preponderance of evidence, and on appeal hopes to
demonstrate state of evidence preponderates greatly against jury's finding).


B. Legal Insanity

 A defendant cannot be convicted of a criminal offense if he is legally insane at
the time of the crime. See Tex. Pen. Code Ann. § 8.01(a) (Vernon 1994).

 There is a distinction between medical insanity and legal insanity within
the meaning of Section 8.01. The existence of a mental disease alone
is not sufficient to establish legal insanity unless the accused was
mentally ill to the point that he did not know his conduct was wrong.


Plough v. State, 725 S.W.2d 494, 500 (Tex. App.-Corpus Christi 1987, no pet.). 


 "The purpose of the insanity defense issue is to determine whether the accused
should be held responsible for the crime, or whether his mental condition will excuse
holding him responsible." Graham v. State, 566 S.W.2d 941, 948 (Tex. Crim. App.
1978). Ultimately, this issue lies within the province of the jury, not only as to the
credibility of the witnesses and weight of the evidence, but also as to the limits of the
defense itself. Bigby, 892 S.W.2d at 878; Graham, 566 S.W.2d at 952; Maestras v.
State, 963 S.W.2d 151, 156 (Tex. App.-Corpus Christi 1998), aff'd, 987 S.W.2d 59
(Tex. Crim. App. 1999); Torres, 976 S.W.2d at 347; see Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979).

 The authority granted in Clewis [v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996)] to disagree with the fact finder's determination is
appropriate only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice. Otherwise due
deference must be accorded the fact finder's determinations, particularly
those determinations concerning the weight and credibility of the
evidence.


Johnson, 23 S.W.3d at 9. "[W]e must remain appropriately deferential to the trial
court so as to avoid this Court substituting its judgment for that of the factfinder." 
Torres, 976 S.W.2d at 347 (citing Clewis, 922 S.W.2d at 133). Any inconsistencies
in the evidence are resolved in favor of the verdict. Id.

 Because the circumstances of a crime are always important in determining the
mental state of the accused at the time of the offense, Graham, 566 S.W.2d at 951,
the trier of fact may consider such evidence as the appellant's demeanor before and
after the offense, attempts to evade police, attempts to conceal incriminating
evidence, expressions of regret or fear of the consequences of his actions, other
possible motives for the offense, and other explanations for his behavior. Aschbacher
v. State, 61 S.W.3d 532, 535 (Tex. App-San Antonio 2001, pet. ref'd) (citing Torres,
976 S.W.2d at 347-48). Moreover, because the insanity issue is not strictly medical,

 expert witnesses, although capable of giving testimony that may aid the
jury in its determination of the ultimate issue, are not capable of dictating
determination of that issue. Only the jury can join the non-medical
components that must also be considered in deciding the ultimate issue. 
That ultimate issue of criminal responsibility is beyond the province of
expert witnesses. Were it otherwise, the issue would be tried in
hospitals rather than in the courts.


Graham, 566 S.W.2d at 949. Furthermore, it is not necessary for the State to present
expert medical testimony that a defendant is sane in order to counter the defense
experts testimony regarding insanity. Id. at 950. While a jury may not arbitrarily
disregard expert testimony on the legal issue of insanity, it also may not give
conclusive effect to the opinion merely because it is not challenged by some other
expert. Id. (quoting United States v. Fortune, 513 F.2d 883, 890 (5th Cir. 1975)). 
Therefore, when circumstances suggest otherwise, a jury may accept or reject, in
whole or in part, the opinion testimony of a witness, and may even accept lay
testimony over that of experts. See id. at 952; Preston v. State, 457 S.W.2d 279,
280 (Tex. Crim. App. 1970); Ward v. State, 787 S.W.2d 116, 119 (Tex. App.-Corpus
Christi 1990, pet. ref'd).

C. Analysis

 In support of his insanity defense, Mitten elicited testimony from family
members regarding instances of unusual behavior during the weeks preceding the
murders. Medical expert witnesses testified, and while the experts may have agreed
that, at the time of the murders, Mitten suffered from some form of mental disorder,
there was controverting evidence regarding the issue of legal insanity. Mitten made
an exculpatory oral statement that conflicted with his written statement. The evidence
also reveals that when Mitten used the phone while detained at the police department, 
he wrapped it with his shirt. This gave the sergeant the impression that Mitten did not
want to leave his fingerprints on the phone. Further, Dr. Blanchard examined Mitten
the evening of the murders and two days afterwards, and reported nothing significant
regarding his behavior. Finally, four days after the incident, Cody commented to an
officer that "[he] loved his mother to death and [he] guess[ed] [he] just got jealous."

 Considering all the evidence relevant to the legal insanity issue, we conclude
there is evidence in this case indicating Mitten was legally sane at the time he stabbed
the victims to death with a butcher knife. The record shows controverting evidence
as to whether Mitten knew the difference between right and wrong. A rational trier
of fact could have resolved the conflicting testimony regarding legal insanity against
Mitten. It was possible for the jury to have rejected, in whole or in part, the expert
opinion testimony of the defense's experts and interpreted the circumstances
surrounding the crime, including Mitten's statements and testimony provided by lay
witnesses, as evidence of Mitten's knowledge that his conduct was wrong. See
Graham, 566 S.W.2d at 952; Preston, 457 S.W.2d at 280; Ward, 787 S.W.2d at
119; see also Aschbacher, 61 S.W.3d at 535 (citing Torres, 976 S.W.2d at 347-48). 
The jury's rejection of Mitten's insanity defense was not beyond the discretion
afforded to the jury to decide this issue. See Graham, 566 S.W.2d at 952.

 We therefore conclude the evidence is factually sufficient to support the jury's
finding as it is not so against the great weight and preponderance of the evidence as
to be manifestly unjust. See Bigby, 892 S.W.2d at 975; Meraz, 785 S.W.2d at 155;
Torres, 976 S.W.2d at 347; see also Johnson, 23 S.W.3d at 7. Mitten's first issue
is overruled.

II. Challenge to Admission of Written Statement

 By issue two, Mitten contends his written statement, in which he confesses he
stabbed his mother and Sifford, should not have been admitted at trial because the
State failed to sufficiently establish that he knowingly, intelligently or voluntarily
waived his right to counsel before making the statement.

 Generally, we review evidentiary rulings under an abuse of discretion standard. 
McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). A trial court
abuses its discretion when it acts without any guiding rules or principles, or acts
arbitrarily or unreasonably. Montgomery v. State, 810 S.W.2d 372, 378-80 (Tex.
Crim. App. 1990). A witness's testimony can be rejected or accepted by the trial
court. Ashcraft v. State, 900 S.W.2d 817, 824 (Tex. App.-Corpus Christi 1995, one
pet. ref'd & one pet. dism'd) (citing Kelly v. State, 621 S.W.2d 176, 179 (Tex. Crim.
App. 1981)). Moreover, when there is controverted evidence, the trial court is the
sole trier of facts and the exclusive judge of the witness's credibility and the weight
given his testimony. Ashcraft, 900 S.W.2d at 823-24 (citing Muniz v. State, 851
S.W.2d 238, 252 (Tex. Crim. App. 1993)); Jacobs v. State, 787 S.W.2d 397, 400
(Tex. Crim. App. 1990); McCoy v. State, 713 S.W.2d 940, 955 (Tex. Crim. App.
1986).

 To meet constitutional standards, a confession that is admitted into evidence
must have been given voluntarily and in compliance with Miranda v. Arizona, 384 U.S.
436, 444 (1966) (Miranda rights include having a lawyer present to advise defendant
prior to and during any questioning); see Tex. Code Crim. Proc. Ann. art. 38.22, § 2
(Vernon 1979); Ashcraft v. State, 934 S.W.2d 727, 737 (Tex. App.-Corpus Christi
1996, pet. ref'd). A defendant may waive his Miranda rights if the waiver is made
voluntarily, knowingly, and intelligently. Moran v. Burbine, 475 U.S. 412, 421 (1986)
(citing Miranda, 384 U.S. at 444). If the totality of circumstances surrounding the
interrogation reveals both an uncoerced choice and the requisite level of
comprehension, a court could properly conclude that the Miranda rights were waived. 
Ashcraft, 934 S.W.2d at 737 (citing Moran, 475 U.S. at 421). Mitten's argument
appears to be directed at the issue of whether he was mentally competent to
understand his rights and to waive his right to have counsel present when he made his
statement.

 At the suppression hearing and at trial, (4) Detective Giddings testified Mitten was
calm, not agitated, and appeared to understand questions asked during the preliminary
interview. Detective Giddings described the discussion as "just a normal conversation
between two people." When Detective Giddings confronted Mitten with discrepancies
in his stories regarding what happened at his mother's home, Mitten admitted he killed
both his mother and Sifford.

 Mitten was warned of his Miranda rights before giving his written statement. 
He signed a Miranda rights advisement card. The rights were also contained on every
page of his written statement, and Mitten signed each page. (5) He appeared to
understand what was being discussed, including his Miranda rights. At no time did
Mitten indicate any misunderstanding, nor did his demeanor change in a way that
suggested to Detective Giddings he did not understand what was happening.

 After the statement was prepared, Mitten reviewed it and noted only one
discrepancy, his date of birth. That change was made on each page. Detective
Giddings testified Mitten's demeanor, the way he was conversing with him and
maintaining eye contact with him, lead him to believe Mitten understood what was
being said to him. In his opinion, Mitten understood his rights, knew and understood
what he was being told, and gave his statement voluntarily.

 Dr. Robert Lyman, M.D., a psychiatrist who performed a psychiatric competency
evaluation on Mitten on December 5, 1997, reported that, on that date, Mitten did not
have the ability to consult with an attorney. Dr. Lyman also treated Mitten on August
5, 1997, a few days after he was arrested and gave his written statement. Although
Dr. Lyman did not do a competency evaluation in August 1997, Mitten, in his opinion,
had improved between August 5 and December 5 of 1997, perhaps because of the
medication he was taking. Dr. Lyman also concluded Mitten could probably not have
knowingly, intelligently, and voluntarily waived his right to an attorney on August 5,
1997. On cross-examination, however, when asked whether he could determine
whether Mitten was incompetent in August based on his evaluation in December, Dr.
Lyman responded that "[he could] only make an inference from [his] competency
evaluation in December."

 Our review of the totality of the circumstances surrounding the interrogation
reveals the trial court could have concluded Mitten's statement was uncoerced and
that Mitten had the requisite level of comprehension to enable the trial court to
properly conclude he had waived his Miranda rights. See Moran, 475 U.S. at 421. 
It is apparent the trial court, in admitting the statement, accepted Detective Giddings's
testimony and, while considering the testimony of Dr. Lyman, rejected it. See
Ashcraft, 900 S.W.2d at 823-24. The trial court did not abuse its discretion in
concluding that the statement was taken in compliance with Miranda and admitting
it into evidence at trial. Mitten's second issue is overruled.

III. Ineffective Assistance of Counsel


 The standard of review for ineffective assistance of counsel was promulgated
by Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted in Texas by
Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). First, trial counsel's
performance must fall "below an objective standard of reasonableness." Strickland,
466 U.S. at 687-88; Stone v. State, 17 S.W.3d 348, 350 (Tex. App.-Corpus Christi
2000, pet. ref'd). Secondly, the appellant must prove that "the deficient performance
prejudiced the defense" by "a reasonable probability that, but for counsel's errors, the
result of the proceeding would have been different." Strickland, 466 U.S. at 686,
694; Stone, 17 S.W.3d at 350. The reviewing court must presume counsel is better
positioned than the appellate court to judge the pragmatism of the particular case, and
that he made all significant decisions in the exercise of reasonable professional
judgment. Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); Moffatt v.
State, 930 S.W.2d 823, 826 (Tex. App.-Corpus Christi 1996, no pet.). There is a
strong presumption that counsel's conduct fell within a wide range of reasonable
professional assistance. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001). The record must contain evidence of counsel's reasoning, or lack thereof, to
rebut that presumption. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).

A. Alleged Failure to Establish Insanity

as Basis for Exclusion of Written Statement


 Mitten contends in his third issue he was denied effective assistance because
counsel failed to present expert testimony that would have established his serious
mental illness and probable insanity at the time of the offense, as a basis for the
exclusion of his written statement. However, counsel did provide expert testimony at
the suppression hearing to refute testimony provided by the State regarding the
admission of Mitten's written statement. Mitten also argues that counsel should have
reurged his objection to the admission of the statement following testimony offered
by other expert witnesses. However, based on the qualified opinions expressed by the
testifying psychiatrists, it is unlikely the trial court would have sustained such a
repeated objection. Therefore, presuming counsel was better positioned than we are
now to judge the pragmatism of the particular case, and that he made all significant
decisions in the exercise of reasonable professional judgment, Delrio, 840 S.W.2d at
447, we conclude trial counsel's performance did not fall "below an objective standard
of reasonableness." Strickland, 466 U.S. at 687-88. Mitten's third issue is overruled.




B. Alleged Failure to Challenge 

Admissibility of Oral Statement


 By his fourth issue, Mitten argues counsel's assistance was ineffective because
he failed to assert a proper legal challenge to the admissibility of Mitten's exculpatory
oral assertion that Sifford stabbed his mother, which caused him to stab Sifford. This
oral exculpatory assertion contradicted his subsequent written statement wherein
Mitten stated he uncontrollably stabbed Sifford and then his mother.

 Oral custodial statements are inadmissible unless they lead to the discovery of
evidence conducive to establishing guilt. Tex. Code Crim. Proc. Ann. art. 38.22, §
3(a), (c) (Vernon Supp. 2002). Mitten contends his oral statement did not lead to
evidence that was conducive to establishing his guilt, thus, admission of the statement
was prohibited by law. However, in his oral statement, Mitten informed the authorities
(1) he stabbed Sifford, and (2) the stabbing occurred in Victoria. Without addressing
the affirmative defenses raised, these assertions of facts are not controverted and
conduce to establish Mitten committed a crime; he stabbed Sifford in Victoria. See
id.

 Furthermore, the State contends Mitten's oral statement was admissible
because Mitten was not in custody at the time he made the statement. Detective
Giddings and Sergeant Dehaven testified Mitten was not in custody while at the army
base hospital where he made the complained-of statement. Moreover, Officer Anders
testified they did not want Mitten to leave the hospital because he was the only
witness and they wanted to get a statement from him as part of the investigation. 
While Mitten contends otherwise, the State asserts Officer Daniel Anders's testimony
also establishes Mitten was not in custody at the time he offered his oral statement.

 Again, presuming counsel was better positioned than we are now to judge the
pragmatism of the particular case, and that he made all significant decisions in the
exercise of reasonable professional judgment, Delrio, 840 S.W.2d at 447, we conclude
trial counsel's performance did not fall "below an objective standard of
reasonableness," when he did not challenge the admissibility of the exculpatory oral
assertion. Strickland, 466 U.S. at 687-88. Mitten's fourth issue is overruled.

IV. Admission of Statement from Competency Report

 By issue five, Mitten contends the trial court erred in permitting, over objection,
a statement he made during a pre-trial competency examination to Dr. John Quinn, a
forensic psychologist. Mitten contends his statement was statutorily inadmissible and
sufficiently harmful because it related to the issue of his guilt. Article 46.02, section
3(g) of the Texas Code of Criminal Procedure provides:

 No statement made by the defendant during the examination or hearing
on his competency to stand trial may be admitted in evidence against the
defendant on the issue of guilt in any criminal proceeding.


Tex. Code Crim. Proc. Ann. art. 46.02, § 3(g) (Vernon 1979) (emphasis added). In his May 22, 1998, competency report, Dr. Quinn wrote "[Mitten] is very
interested in being found not guilty by reason of insanity and feels that he will be
quickly released into the community after a few months." During the course of the
trial, this statement was admitted into testimony. However, the jury was aware that
Mitten asserted a plea of insanity. Defense counsel commented on the plea of insanity
during voir dire. Witnesses for the defense offered opinions regarding Mitten's degree
of sanity at the time of the murders. In Dr. Quinn's comment, it is clear Mitten is
simply expressing a desire that his insanity defense would be successful and that he
would be released quickly. We find no implication of the issue of guilt or guilt by
reason of insanity in this statement. Furthermore, Mitten provides us with no
argument or supporting authority for his general contention that this statement related
to the issue of guilt and, thus, sufficiently harmed him. Cf. Caballero v. State, 587
S.W.2d 741, 743-44 (Tex. Crim. App. 1979) (court found appellant's incriminating
statements made during competency hearing were harmless error because appellant
confessed same facts as testified to by appellee's witness). Accordingly, we conclude
there was no error. Mitten's fifth point is overruled.

V. Failure to Transcribe Bench Conferences

 By his sixth issue, Mitten contends the court reporter's failure to transcribe and
transmit several bench conferences which occurred during the course of the trial was
error. (6) A court reporter is required to make a full record of the proceedings unless
excused by agreement of the parties. Tex. R. App. P. 13.1(a). In Tanguma v. State,
47 S.W.3d 663, 667 (Tex. App.-Corpus Christi 2001, pet. ref'd), this Court held,
pursuant to appellate rule 13.1, the reporter's duty to record proceedings, including
bench conferences that occur after the trial commences, is mandatory, and, thus,
noncompliance is error. Id.; but see Polasek v. State, 16 S.W.3d 82, 88-89 (Tex.
App.-Houston [1st Dist.] 2000, pet. ref'd) (holding that section 52.046(a) of Texas
Government Code requiring recording be requested is controlling statute, and rule 13.1
is void because it modifies substantive rights of litigant). (7)

 The record reveals the complained-of bench conferences were not recorded and
Mitten had filed a written pre-trial motion requesting all proceedings of the Court be
recorded. Further, no agreement to excuse the recording appears in the record. Thus,
the court reporter's failure to record and transcribe the identified bench conferences
that occurred after the trial commenced, without agreement of the parties, constitutes
error. See Tex. R. App. P. 13.1(a).

 However, a failure to record bench conferences does not automatically result
in reversal. Tanguma, 47 S.W.3d at 667. Texas Rule of Appellate Procedure 44.2
provides there are two kinds of error in criminal cases, constitutional error and other
errors. Id. at 674 (citing Tex. R. App. P. 44.2). Mitten does not claim constitutional
error, nor is such implicated in this case. See, e.g., Arizona v. Fluminante, 499 U.S.
279, 295-302 (1991) (admission of coerced confession held harmful); Tanguma, 47
S.W.3d at 676 (failure of court reporter to record any possible challenges for cause did
not rise to level of constitutional error).

 We therefore review for errors affecting non-constitutional rights. However,
even if non-constitutional error is found, we will disregard any error that does not
affect substantial rights. Id. at 676 (citing Tex. R. App. P. 44.2). "A substantial right
is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict." Id. (citing King v. State, 953 S.W.2d 266, 261 (Tex.
Crim. App. 1997)). This Court will not overturn a criminal conviction if a review of the
record as a whole assures us that the error did not influence the jury, or had but a
slight effect. Id. (citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998)).

 Mitten first complains the court reporter failed to record a bench conference that
occurred after defense counsel cross-examined the State's first witness, a staff
sergeant who was on duty when Mitten arrived at the Brooke Army Medical Center on
the night in question, and after the State advised the court that it had no further
questions. Following the unrecorded bench conference, the witness was reminded of
the instruction given regarding the trial and that he was subject to recall. The witness
was then excused.

 The second unrecorded bench conference occurred after the State attempted
to offer as an exhibit an original copy of Mitten's voluntary statement. Immediately
following the unrecorded bench conference, outside the presence of the jury, defense
counsel presented his objections to the admission of the exhibit and the State
responded. This subsequent conference was recorded. The court noted the objections
and overruled them. When the jury returned, the court admitted the exhibit.

 The last unrecorded bench conference occurred when the State asked its expert
witness about a statement made by Mitten during a competency evaluation. The court
called counsel to the bench and the content of the conference was unrecorded. 
However, the record reflects that the jury was recessed and the court and counsel held
a recorded bench conference on the admissibility of Mitten's statement.

 Mitten has asserted no consequences from the failure of the court reporter to
record the three bench conferences. Moreover, based on our review of the record as
a whole, we cannot ascertain that any substantial right was affected by this failure. 
Accordingly, while we conclude the court reporter's failure to completely record the
proceedings at trial was error, such failure is not of constitutional dimension, nor has
it affected Mitten's substantial rights. We must, therefore, disregard the error. Tex.
R. App. P. 44.2(b). Mitten's sixth issue is overruled.

 The judgment of the trial court is affirmed.


 NELDA V. RODRIGUEZ

 Justice




Majority Opinion by Justice Nelda V. Rodriguez, joined in its entirety by Chief Justice
Rogelio Valdez, Justice Federico Hinojosa, and Retired Justice Don Wittig, and joined
in parts I, II, III, and V of the majority opinion by Justices J. Bonner Dorsey and
Errlinda Castillo.


Dissenting Opinion by Justice Linda R. Yañez, joined in part by Justices J. Bonner
Dorsey and Errlinda Castillo.




Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 13th day of June, 2002.

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. R. App. P. 41.2(b) and Tex. Gov't Code Ann. § 74.003
(Vernon 1998).
2. This factual account of the incident is taken from Mitten's written statement.
3. The testifying psychiatrists revealed Mitten exhibited behaviors characteristic of
schizophrenia, schizophreniform, or a brief psychotic break. The distinction made between
these diagnoses is the duration of the mental illness, and symptoms of the last two diagnoses
are not inconsistent with the first. According to Dr. Gary Aitcheson, a brief psychotic
disorder occurs when a person is psychotic for less than one month, schizophreniform is a
disorder with symptoms that last less than six months, and schizophrenia is a disorder with
symptoms remaining for a six-month period. At the time of the incident, Mitten did not have
the six-month history that would allow for the diagnosis of schizophrenia.
4. Following a hearing on Mitten's motion to suppress his written statement, the trial
judge withheld a ruling on the motion. The court did, however, admit the written statement
over defense's objection at trial. Because defense counsel incorporated arguments made
during the suppression hearing at trial, we will consider relevant evidence adduced at the
pretrial hearing and at trial.
5. Mitten's written statement and the rights card were admitted as State's Exhibit 1 at
the suppression hearing and as State's exhibits 1 and 2, respectively, at trial.
6. We note that Mitten complains of "several bench conferences" that were not
recorded. He provides us, however, with record cites to only three such conferences. 
Because a brief must contain clear and concise argument for contentions made with
appropriate citations to the record, our analysis will be limited to the three conferences
specifically identified in his brief. See Tex. R. App. P. 38.1(h).
7. In Tanguma v. State, 47 S.W.3d 663, 671 (Tex. App.-Corpus Christi 2001, pet.
ref'd), we concluded there was no valid reason for holding rule 13.1 void, and respectfully
declined to follow Polasek. Id.