NUMBER 13-06-116-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


SAMUEL ESPINOZA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 214th District Court of Nueces County, Texas.

 



MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Vela 

Memorandum Opinion by Justice Yañez

 

 A jury convicted appellant, Samuel Espinoza, of solicitation to commit capital
murder (1) and assessed his punishment at sixty years in prison. In three issues, appellant
contends (1) the trial court erred in failing to make findings of fact and conclusions of law
concerning the voluntariness of his confession; (2) he was denied effective assistance of
counsel; and (3) the trial court erred when it conducted a hearing on his motion for new trial
without his presence. We affirm. 

Background

 Because appellant does not challenge the sufficiency of the evidence supporting
his conviction, only a brief recitation of the facts is necessary. (2) Arnoldo Campos, a
confidential informant, testified that he met with appellant's girlfriend and co-defendant,
Herminia ("Alicia") Ozuna, (3) and her father, Augustine Perez, to discuss a potential drug
deal. Campos negotiated to purchase thirty kilos of cocaine from Ozuna. Ozuna
arranged for Campos to meet appellant, who had "connections," to provide the cocaine
for sale. Ozuna and appellant were acting as "brokers" for the drug deal. Campos
testified that Ozuna and appellant's profit from the proposed drug sale would be about
$20,000 to $25,000.

 Campos testified that at a meeting with Ozuna and Perez, Ozuna told Campos
that she wanted to find someone to kill her common-law husband, Federico Hernandez. 
Eventually, Campos tape-recorded one of his conversations with Ozuna, in which they
discussed the drug deal and Ozuna's desire to have her husband killed. Campos
testified that Ozuna said that appellant knew of her plan to have her husband killed. 
Campos told Ozuna it would cost about $5,000 to hire someone to kill her husband, and
she agreed to pay that amount.

 Campos met with Ozuna and appellant at a ranch to discuss the details of the
drug deal. Campos told Ozuna he had found a "hit man" to kill her husband. According
to Campos, appellant did not act surprised by the murder-for-hire discussion, and when
Campos asked him if he was "okay" with the plan, appellant said he was and "was just
gonna do everything possible to help [Ozuna] out." Campos testified that Texas Ranger
Roberto Garza was advising him as to how to set up a meeting between Ozuna and an
undercover agent portraying a prospective "hit man." Pursuant to Garza's instructions,
Campos called Ozuna and told her to meet the "hit man" at a specific room at a motel in
Corpus Christi. Campos testified that based on his conversation with Ozuna and
appellant, appellant "knew exactly what was gonna happen" in the murder-for-hire plan.

 John Lubbock, a retired officer with the narcotics unit of the Texas Department of
Public Safety, testified that he agreed to work undercover as the "hit man" hired by
Ozuna. Lubbock met appellant and Ozuna at the Corpus Christi motel room. Garza
and local law enforcement officers had arranged to videotape the meeting in the motel
room. The videotape was shown to the jury. (4) Lubbock identified appellant as the
person in the videotape with Ozuna. He testified that Ozuna gave him a picture of
Hernandez (the intended victim), a note with Hernandez's address on it, and forty
dollars as down payment for the murder. On cross-examination, Lubbock testified that
during the meeting, appellant indicated that he wanted the victim killed with a pistol by
holding his hand like a pistol and saying, "I want it done that way." (5)

 Garza testified that he arranged to videotape the meeting and was in the
adjacent hotel room during the meeting "ready to kick the door down" "in case
something went wrong." A day or so later, Garza obtained warrants to arrest Ozuna
and appellant. Garza read appellant his rights, witnessed his waiver of rights, and
obtained appellant's written statement. Appellant's written statement was admitted at
trial without objection. 

 The trial court conducted a pre-trial hearing to hear various motions filed by
appellant. (6) After the trial court heard appellant's arguments regarding his "motion for
hearing on competency," "motion for discovery and inspection," "motion for voir dire
prior to expert giving his opinion," and "request for evidence of bad acts," appellant's
counsel stated, "we have an absolute right to the hearing on the voluntariness of any
statement by the Defendant." When asked if he was "talking about a motion to
suppress the statement," counsel responded, "Well, Your Honor, actually, I was just
trying to determine whether or not there were actually voluntary statements. I didn't file
it as a motion to suppress. I guess we could term it that." (7) The trial court stated it
would proceed on appellant's motion to suppress and that appellant's counsel would be
"able to question [the officer who took appellant's statement] on the voluntariness of the
statement." 

 The State began by stating it would "assume the burden" and called Garza as a
witness. Garza testified that he advised appellant of his rights and took his statement. 
Garza stated that there was no indication appellant was mentally impaired and that he
was not coerced or threatened in any way. The State also presented the testimony of
Edward Gonzalez, a Department of Public Safety narcotics officer. Gonzalez testified
that he witnessed Garza's interview of appellant. According to Gonzalez, appellant
understood English, was advised of his rights, and gave a voluntary statement. 
Appellant presented no witnesses. Appellant's counsel argued to the trial court that
there was "some issue" as to whether appellant understood what occurred, that
appellant was instructed to answer in English, and that he therefore would "ask the
court to suppress this confession as being voluntary [sic] and in conformity [sic] with all
Miranda warnings." The trial court denied appellant's motion to suppress.

Failure to file Findings of Fact and Conclusions of Law

as to Voluntariness


 In his first issue, appellant contends the trial court erred in failing to file findings
of fact and conclusions of law, as required by section 6 of article 38.22 of the code of
criminal procedure, (8) as to the voluntariness of his written statement. The State
responds that the trial court is required to file such findings "only where the appellant
has raised some underlying challenge to the voluntariness of the confession," and that
here, appellant has not done so. We agree. 

 When a question is raised as to the voluntariness of a statement of an accused,
the trial court must hold a hearing outside the presence of the jury to determine if the
accused made the statement freely and voluntarily. (9) The State bears the burden of
proof to show that the statement was voluntary. (10) Written findings of fact and
conclusions of law are only required when a defendant has raised the issue of the
voluntariness of his statement. (11)

 Here, the trial court held a hearing and provided appellant an opportunity to
cross-examine the State's witnesses and present evidence regarding the voluntariness
of appellant's written statement. During the hearing, neither appellant nor the State
presented any evidence raising a fact issue on voluntariness. Appellant did not testify
at the hearing and presented no witnesses or evidence. Ranger Garza and Officer
Gonzalez testified that appellant was given Miranda (12) warnings before he was
interviewed, that he waived his rights, was not given any promises, and was not
coerced or threatened in any way. Appellant cross-examined the State's witnesses, but
did not raise any question that either contradicted the officers' testimony or touched on
the issue of voluntariness. (13) We conclude appellant failed to present any evidence
raising a fact issue as to the voluntariness of his written statement. (14) Accordingly, the
trial court was not required to make written findings of fact and conclusions of law. (15) 

 To the extent appellant's counsel attempted to argue that there was "some
issue" as to whether appellant understood what occurred, and whether he understood
English sufficiently, we find his argument to be without merit. (16) Ranger Garza testified
that he verified appellant's ability to read English by having him read a portion of the
statement aloud. Officer Gonzalez testified that appellant seemed to understand
English and did not appear to be under the influence of any narcotic drugs or alcohol
during the interview. 

 We hold the trial court did not err in failing to make findings of fact and
conclusions of law regarding the voluntariness of appellant's written statement. We
overrule appellant's first issue.

Ineffective Assistance 

 By his second issue, appellant contends he was denied effective assistance of
counsel. Appellant claims his trial counsel was ineffective at the suppression hearing
by failing to (1) have appellant testify and (2) call Raul R. Capitaine, M.D., P.A., (17)
concerning appellant's mental ability to comprehend his legal rights. Appellant
contends his counsel was ineffective at the guilt-innocence stage of trial by failing to (1)
have appellant testify on the issues of entrapment and "aid[ing] and abetting" Ozuna;
(2) call Dr. Capitaine to testify concerning appellant's mental condition on the issues of
the entrapment defense, the "aid and abetting" issue, and the insanity defense; (3) call
any defense witnesses; and (4) present any defense. Appellant contends his counsel
was ineffective at the punishment stage by failing to (1) have appellant testify and (2)
have Dr. Capitaine testify on appellant's mental condition in mitigation of punishment. 

 Strickland v. Washington, (18) sets forth the standard of review for effectiveness of
counsel. (19) Strickland requires a two-part inquiry. (20) The defendant must first show that
counsel's performance was deficient, in that it fell below an objective standard of
reasonableness. (21) Second, the defendant must further prove there is a reasonable
probability that but for counsel's deficient performance, the result of the proceeding
would have been different. (22) A reasonable probability is a probability sufficient to
undermine confidence in the outcome. (23) 

 The determination regarding whether a defendant received effective assistance
of counsel must be made according to the facts of each case. (24) An appellate court
looks to the totality of the representation and the particular circumstances of the case in
evaluating counsel's effectiveness. (25) 

 The appellant bears the burden of proving by a preponderance of the evidence
that counsel was ineffective. (26) There is a strong presumption that counsel's conduct fell
within the wide range of reasonable professional assistance. (27) To defeat the
presumption of reasonable professional assistance, "any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness." (28) 

 Generally, the record on direct appeal will be insufficient to show that counsel's
representation was so deficient as to meet the first part of the Strickland standard. (29) 
We will not speculate to find trial counsel ineffective when the record is silent on
counsel's reasoning or strategy. (30) In rare cases, however, the record can be sufficient
to prove that counsel's performance was deficient, despite the absence of affirmative
evidence of counsel's reasoning or strategy. (31)

 Here, appellant filed a motion for new trial, but did not raise the issue of
ineffective assistance of counsel. (32) At the hearing on the motion for new trial, appellant
complained that (1) the jury was prejudiced against appellant by the evidence regarding
the drug deal, and (2) the indictment included Ozuna, but her "name was not read at
either stage of the trial." Thus, no motion for new trial was filed on the issue of
counsel's alleged ineffective assistance and the record is silent as to why counsel acted
as he did. 

 Each alleged error is an error of omission. We cannot determine the reasons
that counsel did not call appellant to testify (at any stage of the proceedings), did not
call Dr. Capitaine to testify (at any stage of the proceedings), or call any defense
witnesses. When the record is silent, we may not speculate about why counsel acted
as he did. (33) It is not sufficient that the appellant show, with the benefit of hindsight, that
his counsel's actions or omissions during trial were merely of questionable
competence." (34) "Rather, the record must affirmatively demonstrate trial counsel's
alleged ineffectiveness." (35) Because there is no record to show trial counsel's reasons
for acting or failing to act in the manner challenged, appellant has failed to establish
that his counsel was ineffective. (36) 

 Moreover, appellant has failed to address or explain why the purported failures
by trial counsel would have caused a different result. We conclude that appellant has
not established the second prong of Strickland because he has failed to show in
reasonable probability that, but for counsel's errors, the result of the proceeding would
have been different. (37) We overrule appellant's second issue.

Absence from Motion for New Trial Hearing 

 By his third issue, appellant complains that the trial court erred in holding a
hearing on his motion for new trial in his absence. At the hearing, appellant's counsel
explained that his attempt to secure appellant's presence by bench warrant had been
unsuccessful. (38) Appellant's counsel expressly stated that he wished to go forward
without appellant and that he waived appellant's right to be present. Counsel also
stated that even if appellant was present, he would not testify at the hearing. 

 A defendant may waive his right to be present at a hearing on his motion for new
trial. (39) We conclude appellant waived his right to be present, and the trial court did not
err in conducting the hearing without his presence. (40) We overrule appellant's third
issue.

Conclusion

 We affirm the trial court's judgment. 



 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 22nd day of May, 2008. 

 

1. [1] See Tex. Penal Code Ann. §§ 15.03(a), (d)(1) (Vernon 2003), 19.03(a)(3) (Vernon Supp. 2007). 
2. [2] See Tex. R. App. P. 47.1.
3. [3] Appellant and Ozuna were charged in the same indictment with solicitation to commit capital murder. After
trial began, Ozuna pleaded "guilty," and appellant's case was severed from Ozuna's. Ozuna appeals in
appellate cause number 13-05-624-CR. Appellant pleaded "not guilty," and his case was tried to a jury. The 
record in 13-05-624-CR has been incorporated into this cause for purposes of appeal. 
4. [4] The record contains a transcript of the audio portion of the videotape. However, the various speakers are
not identified. When the videotape was admitted, appellant's counsel stated that he "had a pretrial objection
regarding the search warrant, et cetera. So we renew that objection." The trial court overruled the objection. 
 
5. [5] The transcript reflects that someone (apparently Lubbock) said, "You want him shot and make it look like
an accident. No problem."
6. [6] Appellant's counsel filed eight pre-trial motions on the same day: "Request for Evidence of Bad Acts and
Request for Jury Charge," "Defendant's Objection to Jury Charge" (no jury had been chosen and no charge
had been filed), "Motion for Voir Dire Prior to Expert Giving His Opinion," "Motion to Examine Prosecutor's
Peremptory Strike List," "Motion to Suppress any Statement Made by the Defendant and/or for Hearing on the
Voluntariness of any Statement made by the Defendant," "Request for Evidence of Organized Criminal
Activity," "Motion for Discovery and Inspection," and "Objection to Sending Exhibits to the Jury Room."
7. [7] Appellant's motion to suppress urged only that appellant "has the absolute right to a hearing on the
voluntariness of any statement made by the defendant regardless of how the [S]tate chooses to characterize
the statement." The motion did not identify any statement by appellant as involuntary, nor did it assert that
any statement was involuntary. 
8. [8] See Tex. Code Crim. Proc. Ann. art. 36.22 § 6 (Vernon 2005). Section 6 provides, in pertinent part: 


In all cases where a question is raised as to the voluntariness of a statement of an
accused, the court must make an independent finding in the absence of the jury as to
whether the statement was made under voluntary conditions. If the statement has been
found to have been voluntarily made and held admissible as a matter of law and fact by
the court in a hearing in the absence of the jury, the court must enter an order stating its
conclusion as to whether or not the statement was voluntarily made, along with the
specific finding of facts upon which the conclusion was based, which order shall be filed
among the papers of the cause. 


Id. 
9. [9] See id.; Jackson v. Denno, 378 U.S. 368, 380 (1964).
10. [10] Ashcraft v. State, 934 S.W.2d 727, 737 (Tex. App.-Corpus Christi 1996, pet. ref'd). 
11. [11] See Tex. Code Crim. Proc. Ann. art. 36.22 § 6.
12. [12] See Miranda v. Arizona, 384 U.S. 436, 444 (1966).
13. [13] Appellant's counsel asked questions concerning the taking of appellant's statement. At one point, counsel
asked Garza if he knew whether appellant could read. Garza stated that he had appellant read the first page
of the voluntary statement aloud. 
14. [14] In Hartfield v. State, 28 S.W.3d 69, 72 (Tex. App.-Texarkana 2000, pet. ref'd), the appellant challenged the
admissibility of his written statement in which he admitted that he strangled his wife. Id. at 71. During trial,
he obtained a hearing on his motion to suppress the statement. Id. at 72. At the hearing, the only ground he
argued was that he had not had an opportunity to read his statement after it was prepared. Id. The court of
appeals held that his claim did "not constitute a contention of involuntariness." The court also held that no
findings of fact were required because the appellant did not challenge the voluntariness of his statement. Id. 
 
15. [15] See Lindley v. State, 635 S.W.2d 541, 544-45 (Tex. Crim. App. 1982) (holding findings of fact and
conclusions of law not required where appellant did not specifically raise issue of voluntariness of his
statements, did not object to admissibility of statements on grounds that statements were involuntary, and did
not present any evidence on issue of voluntariness); Braddock v. State, 5 S.W.3d 748, 754 (Tex.
App.-Texarkana 1999, no pet.) (noting findings of fact and conclusions of law not required where appellant
failed to object to admissibility of statement as involuntary and failed to present any evidence on the issue);
Mowbray v. State, 788 S.W.2d 658, 663 (Tex. App.-Corpus Christi 1990, pet. ref'd) (holding absent evidence
which raises an issue of voluntariness, no finding on voluntariness is required); Miller v. State, 666 S.W.2d
269, 273 (Tex. App.-Dallas 1984, pet. ref'd) (holding findings of fact and conclusions of law not required
where there is no evidence creating a fact issue as to the voluntariness of the appellant's statements). 
16. [16] See Lindley, 635 S.W.2d at 545 (noting officer's statement that appellant "seemed to appear not to be
himself" was ambiguous and insufficient to establish that statements were not voluntary). 
17. [17] Dr. Raul R. Capitaine, a forensic psychiatrist, was appointed by the trial court to evaluate appellant for
purposes of determining his competency to stand trial and whether he was insane at the time of the offense. 
Although Dr. Capitaine's report was not admitted at trial, it is included in the appellate record pursuant to
appellant's bill of exceptions. See Tex. R. Evid. 103(a)(2). Appellant does not challenge the exclusion of the
report on appeal. Dr. Capitaine found appellant was competent to stand trial, was not insane at the time of
the offense, and that although appellant's intellectual functioning was "below average," he was not mentally
retarded. 
18. [18] Strickland v. Washington, 466 U.S. 668, 687 (1984).
19. [19] See Ex parte Ellis, 233 S.W.3d 324, 339 (Tex. Crim. App. 2007); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).
20. [20] Thompson, 9 S.W.3d at 812. 
21. [21] Id.
22. [22] Id.
23. [23] Id.
24. [24] Id.
25. [25] Id.
26. [26] Id. at 813.
27. [27] Id.
28. [28] McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).
29. [29] Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).
30. [30] See Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). 
31. [31] Id. 
32. [32] We note that the motion for new trial was filed by appellant's trial counsel. As the Texas Court of Criminal
Appeals has noted, 


In most cases, the record on direct appeal is "inadequate to develop an ineffective
assistance claim" because "the very ineffectiveness claimed may prevent the record from
containing the information necessary to substantiate such a claim." [quoting Ex parte
Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)]. Therefore, when an applicant files
an application for a writ of habeas corpus, the record can be supplemented by the trial
court gathering facts. This "provides an opportunity for a dedicated hearing to consider
the facts, circumstances, and rationale behind counsel's actions at that juncture of trial."
[quoting Thompson v. State, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999)]. 


Ex parte Varelas, 45 S.W.3d 627, 629-30 (Tex. Crim. App. 2001).
33. [33] Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Ozuna v. State, 199 S.W.3d 601, 612 (Tex.
App.-Corpus Christi 2006, no pet.). Similarly, when the appellate record is silent as to why trial counsel fails
to take an action, the appellant has failed to rebut the presumption that trial counsel's decision was in some
way--be it conceivable or not--reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).
34. [34] Mata, 226 S.W.3d at 430.
35. [35] Id. 
36. [36] See Jackson, 877 S.W.2d at 771. 
37. [37] See Ellis, 233 S.W.3d at 330; Strickland, 466 U.S. at 694.
38. [38] At the hearing on appellant's motion for new trial, the trial court asked the sheriff's office why appellant was
not produced by the bench warrant. The court was advised that the bench warrant, which was prepared by
appellant's counsel's office, was defective because it did not contain certain required information, including 
appellant's TDC number.
39. [39] See Whitaker v. State, 977 S.W.2d 869, 877 (Tex. App.-Beaumont 1998, pet. ref'd) (holding appellant's
counsel waived appellant's right to be present at motion for new trial hearing where appellant was not bench
warranted and counsel elected to proceed with hearing); Coons v. State, 758 S.W.2d 330, 339 (Tex.
App.-Houston [14th Dist.] 1988, pet. ref'd); Escarcega v. State, 711 S.W.2d 400, 402 (Tex. App.-El Paso
1986), pet. dism'd, improvidently granted, 767 S.W.2d 806, 807 (Tex. Crim. App. 1989).
40. [40] See Whitaker, 977 S.W.2d at 877.